UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JASON LATIMORE,
        Plaintiff,


        v.                                    CIVIL ACTION NO.
                                              14-13378-MBB


SUFFOLK COUNTY HOUSE OF
CORRECTIONS, JOHN DOE CORRECTIONAL
OFFICER #1, JOHN DOE CORRECTIONAL
OFFICER #2,
        Defendants.


**MEMORANDUM AND ORDER RE:**
**DEFENDANT SUFFOLK COUNTY SHERIFF'S DEPARTMENT'S MOTION TO**
**DISMISS FOR FAILURE TO STATE A CLAIM (DOCKET ENTRY # 9)**

**December 1, 2015**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss filed by

defendant Suffolk County Sheriff's Department ("SCSD") under

Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)").  (Docket Entry # 9).

Plaintiff Jason Latimore ("plaintiff"), a former inmate at the

Suffolk County House of Corrections, opposes dismissal.  (Docket

Entry # 16).


PROCEDURAL BACKGROUND

Plaintiff filed this civil rights action in August 2014.

(Docket Entry # 1).  The complaint sets out ten counts against

SCSD as well as two unidentified correction officers ("John Doe

Officer 1") and ("John Doe Officer 2").[1]  (Docket Entry # 1).

The counts are as follows:  (1) Count I for conversion; (2) Count II for violations of 42 U.S.C. 1983 ("section 1983"); (3) Count III for violations of the First Amendment; (4) Count IV for violations of the Fifth Amendment; (5) Count V for violations of the Sixth Amendment; (6) Count VI for violations of the Fourteenth Amendment; (7) Count VII for violations of the Massachusetts Civil Rights Act, Massachusetts General Laws chapter 12, section 11I ("MCRA"); (8) Count VIII for intentional infliction of emotional distress; (9) Count IX for violations of Massachusetts General Laws chapter 124, section 1(b), (c) and (q), Massachusetts General Laws chapter 125 and Massachusetts General Laws chapter 127, sections three, 96(a) and 96(b), as well as Massachusetts regulations codified at 103 C.M.R. 403; and (10) Count X for violations of the Eighth Amendment.[2] (Docket Entry # 1).

SCSD moves for dismissal of the complaint for failure to state a claim upon which relief can be granted.  (Docket Entry #

---

[1]  Although the complaint fails to note whether plaintiff is suing the individual officers in their official or independent capacity, plaintiff, who is proceeding pro se, clarifies that he is suing the officers in their individual capacity in the memorandum in opposition to the motion to dismiss.  Accordingly, SCSD's argument that the Eleventh Amendment bans official capacity claims against the individual officers is moot.
[2]  The complaint seeks only monetary damages as opposed to any form of injunctive or declaratory relief.  (Docket Entry # 1, ¶ 1, p. 2) (Docket Entry # 1, ¶¶ A-D, p. 11).

9).  Conversely, plaintiff contends that SCSD's motion should be denied because the complaint includes factual allegations that demonstrate a plausible claim to relief.  (Docket Entry # 16).

## STANDARD OF REVIEW

To survive a Rule (12)(b)(6) motion to dismiss, the complaint must include factual allegations that when taken as true demonstrate a plausible claim to relief even if actual proof of the facts is improbable.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-58 (2007).  Thus, while "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully."  Boroian v. Mueller, 616 F.3d 60, 65 (1st Cir. 2010) (internal quotation marks omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not show[n] that the pleader is entitled to relief."  Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011) (internal quotation marks and citations omitted).

Taking the facts in the governing complaint as "true and read in a plaintiff's favor" even if seemingly incredible, the complaint "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25, 29-30 (1st Cir. 2010).  "[A]ccepting . . . all well-pleaded facts in the complaint and making all

reasonable inferences in the plaintiff's favor," <u>Boroian v. Mueller</u>, 616 F.3d at 64, the "factual allegations 'must be enough to raise a right to relief above the speculative level.'" <u>Gorelik v. Costin, PA-C</u>, 605 F.3d 118, 121 (1st Cir. 2010). Drawing reasonable inferences in plaintiff's favor but eschewing reliance on "'bald assertions, . . . unsubstantiated conclusions,'" <u>Fantini v. Salem State College</u>, 557 F.3d 22, 26 (1st Cir. 2009), and legal conclusions, <u>see Dixon v. Shamrock Financial Corp.</u>, 522 F.3d 76, 79 (1st Cir. 2008) (rejecting unsupported conclusions or interpretations of law in reviewing Rule 12(b)(6) dismissal), the complaint sets out the following facts.

## FACTUAL BACKGROUND

On May 29, 2014, plaintiff was an inmate at the Suffolk County House of Corrections.  (Docket Entry # 1, p. 3). Plaintiff was playing basketball on the recreation deck when "there was a disturbance on the 32-unit dayroom."  (Docket Entry # 1, p. 3).  Plaintiff and a number of other inmates came into the dayroom to see what had caused the disturbance.  (Docket Entry # 1, p. 3).  Corrections Officer Allen came running and began to yell at the inmates.[3]  (Docket Entry # 1, p. 3).  At this time, plaintiff "waved 5 fingers at him and said calm

---

[3]  The complaint does not identify Corrections Officer Allen's first name.

down." (Docket Entry # 1, p. 3). Plaintiff and the other inmates returned to the recreation deck and resumed playing basketball. (Docket Entry # 1, p. 3). Corrections Officer Allen then came out onto the recreation deck and said "'lock in.'" (Docket Entry # 1, p. 3). The inmates all began to grab their uniforms at which point Corrections Officer Allen stated that he was referring specifically to plaintiff. (Docket Entry # 1, p. 3). Plaintiff then asked "'why he wanted him to lock in'" at which point Corrections Officer Allen radioed that plaintiff was refusing to follow an order. (Docket Entry # 1, p. 3). Camera footage shows that plaintiff had attempted to retrieve his uniform before Corrections Officer Allen radioed that plaintiff was refusing to cooperate. (Docket Entry # 1, p. 3).

Plaintiff was escorted out of the unit and moved to segregation. (Docket Entry # 1, p. 3). Once in segregation, plaintiff spoke to an unknown Sergeant and asked that someone other than Corrections Officer Allen or Sergeant Sullivan be assigned to inventory his cell.[4] (Docket Entry # 1, p. 3). The unknown Sergeant stated the he would "'call over'" and, as a result, Corrections Officer Ryan Dorgan was assigned to inventory plaintiff's property. (Docket Entry # 1, p. 3).

---

[4] The complaint does not identify Sergeant Sullivan's first name.

Corrections Officer Ryan Dorgan was late in arriving and the cell was instead inventoried by Corrections Officer Allen and Sergeant Sullivan.  (Docket Entry # 1, p. 3).

On the night of May 29, 2014, Corrections Officer Ryan Dorgan brought the property that had been kept in plaintiff's cell to plaintiff in segregation.[5]  (Docket Entry # 1, p. 3). Corrections Officer Ryan Dorgan signed the inventory form even though he was not the one who had inventoried the property. (Docket Entry # 1, p. 3).  Plaintiff refused to sign the inventory sheet because it was not complete.  (Docket Entry # 1, p. 3).  Specifically, the sheet mentioned that plaintiff was given "Miscellaneous: Legal/Mail" when in fact these materials were not delivered to him, but were either confiscated or destroyed.  (Docket Entry # 1, p. 3).

Plaintiff received a disciplinary report charging him with four institutional offenses.  (Docket Entry # 1, p. 3).  At the scheduled disciplinary hearing on June 2, 2014, plaintiff was found guilty of two of the offenses.  (Docket Entry # 1, p. 3). He was sentenced to five days of isolation and three days isolation suspended for a 30 day time period.  (Docket Entry # 1, p. 3).

---

[5]  The complaint asserts that this event occurred on June 29, 2014.  This court assumes, given the context that plaintiff spent only five days in segregation, that plaintiff was mistaken about the date and intended to refer to May 29, 2014.

The following Monday, June 3, 2014, plaintiff was released
from segregation after serving the five days.  (Docket Entry #
1, p. 3).  Sergeant Depina brought plaintiff his property from
booking.[6]  (Docket Entry # 1, p. 3).  With the exception of a
"box of printed legal cases from Inmate Legal Services and
assorted canteen items," all of plaintiff's property was
missing.  (Docket Entry # 1, pp. 3-4).  Plaintiff filed three to
four grievances pertaining to the missing property and received
no response regarding the confiscation.  (Docket Entry # 1, p.
4).  The Suffolk County Sheriff's Investigative Division ("SID")
interviewed plaintiff about his lost property.  (Docket Entry #
1, p. 4).  Institutional video recordings from the date
plaintiff was placed in segregation show John Doe Officer 1 and
John Doe Officer 2 carrying plaintiff's property out of his
housing unit and onto an elevator.  (Docket Entry # 1, p. 4).

On August 7, 2014, John Doe Officer 1 entered plaintiff's
cell to conduct a search.  (Docket Entry # 1, p. 4).  He
ransacked plaintiff's paperwork and told him "'he had better
throw away some of his trash or he would do it for him.'"
(Docket Entry # 1, p. 4).  John Doe Officer 1 then proceeded to
ask plaintiff if he was pro se.  (Docket Entry # 1, p. 4).  The
following day, August 8, 2014, plaintiff completed his sentence

---

[6]  The complaint does not identify Sergeant Depina's first name.

and presently resides in Dorchester, Massachusetts.  (Docket
Entry # 1, pp. 4, 11).

Plaintiff is missing legal materials including discovery
materials, grand jury minutes from three open cases, written
motions, his notes and "numerous legal pads of case law"
pertaining to the three cases pending in Massachusetts Superior
Court and Boston Municipal Court.  (Docket Entry # 1, p. 4).
The whereabouts of this material, totaling 80 pounds, is
unknown.  (Docket Entry # 1, p. 4).  In addition to the legal
material, plaintiff is missing a number of items of personal
property.  Specifically, he is missing three "yellow legal pads
of music lyrics," one yellow legal pad containing a screenplay,
two yellow legal pads containing two books, one yellow legal pad
of business plans and a loose-leaf notebook also "full of
business plans."  (Docket Entry # 1, p. 4).

As noted above, plaintiff has three open cases in which he
is pro se.  (Docket Entry # 1, p. 4).  Plaintiff has been unable
to defend himself in these court proceedings as a result of
losing a year's worth of legal research.  (Docket Entry # 1, pp.
4, 7).  Furthermore, plaintiff has thus far been unable to
obtain new copies of his legal paperwork "through the courts."
(Docket Entry # 1, p. 4).

DISCUSSION

I.  <u>Eleventh Amendment Immunity</u>

8

SCSD contends that all ten claims are subject to dismissal because it is immune from suit under the Eleventh Amendment. (Docket Entry # 10).  Plaintiff concurs with this contention and states that he "concedes after careful research of the the [sic] relevant 11th Amendment case law that the Suffolk County House of Correction is indeed immune from suit arising out of the actions of its officers while acting under the color of state law." (Docket Entry # 16).

The Eleventh Amendment bars a federal court suit against a state without its consent.  U.S. Const. amend. XI; Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989).  A state is not subject to suit under section 1983 because a state is not a "person" within the meaning of this statute.  Will v. Michigan Dep't of State Police, 491 U.S. at 71.  A suit against an individual in his or her official capacity, moreover, imposes liability on the state he or she represents and is therefore also barred.[7]  Will v. Michigan Dep't of State Police, 491 U.S. at 71; Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Immunity under the Eleventh Amendment "extends to any entity that is an 'arm of the state.'"  Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002) (quoting In re

---

[7]  On the other hand, the Eleventh Amendment does not bar a suit against an individual in his individual capacity.  See Dasey v. Anderson, 304 F.3d 148, 153 (1st Cir. 2002).

San Juan Dupont Plaza Hotel Fire Litigation, 888 F.2d 940, 942
(1st Cir. 1989)).  The analysis, as reframed in Fresenius Medical
Care Cardiovascular Res., Inc. v. Puerto Rico and The Caribbean
Cardiovascular Center Corp., 322 F.3d 56, 61 (1st Cir. 2003), in
light of Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30
(1994), initially assesses "'whether the state has indicated an
intention-either explicitly by statute or implicitly through the
structure of the entity-that the entity share the state's
sovereign immunity.'"  Irizarry-Mora v. University of Puerto
Rico, 647 F.3d 9, 12 (1st Cir. 2011) (quoting Redondo
Construction Corp. v. Puerto Rico Highway and Transportation
Authority, 357 F.3d 124, 126 (1st Cir. 2004)).

It is well established that "modern Massachusetts Sheriff's
Departments [are] arms of the state entitled to sovereign
immunity."  Gallo v. Essex County Sheriff's Dep't, 2011 WL
1155385, at *3 (D.Mass. March 24, 2011); see Adams v. Cousins,
2009 WL 1873584 at *6 (D.Mass. March 31, 2009) ("As a state
agency, the Sheriff's Department is protected by the state's
immunity from suit under the Eleventh Amendment, unless the
immunity is waived").  Furthermore, waiver of immunity is given
effect "'only where stated by the most express language or by
such overwhelming implication from the text as [will] leave no
room for any other reasonable construction.'"  Max-Planck-
Gesellschaft Zur Föerderung Der Wissenschaften E.V. v. Whitehead

Institute for Biomedical Research, 850 F.Supp.2d 317, 327 (D.

Mass. 2011) (quoting Port Auth. Trans-Hudson Corp. v. Feeney,

495 U.S. 299, 305 (1990)).

In the case at bar, it is undisputed that SCSD is an

instrumentality of the Commonwealth.  (Docket Entry # 16).  In

1999, the Massachusetts legislature abolished the governments of

six counties, including Suffolk County.  Mass. Gen. Laws ch.

34B, § 1 (1999).  Pursuant to this legislation, all of Suffolk

County's "functions, duties and responsibilities . . .

including, but not limited to, the operation and management of

the county jail and house of correction . . . [were] transferred

. . . to the [C]ommonwealth."  Mass. Gen. Laws ch. 34B, § 4

(1999).  Thus, "[d]espite its municipal title, the Suffolk

County Sheriff's Department, which oversees the correctional

facilities in Suffolk County, is controlled directly by the

Commonwealth of Massachusetts and all employees of the

Department are employees of the Commonwealth."  Greene v.

Cabral, 2015 WL 4270173, *3 (D.Mass. July 13, 2015).

Accordingly, as a state agency, SCSD is protected by the state's

immunity from suit under the Eleventh Amendment, barring an

unequivocal waiver of that immunity.  Here, the legislation

transferring control of SCSD to the Commonwealth contains no

waiver of sovereign immunity.  SCSD is therefore entitled to

immunity from suit in federal court, pursuant to the Eleventh

Amendment, and the Commonwealth has not waived this immunity. Therefore, all claims against SCSD must be dismissed.

II.   Fifth Amendment Due Process Claim

Alternatively, SCSD submits that plaintiff's claim of a Fifth Amendment violation of the Due Process Clause (Count IV) must be dismissed because SCSD is a state agency, not a federal actor.   (Docket Entry # 10).   Plaintiff's complaint alleges that SCSD "deprived the plaintiff of life, liberty and property without due process of law protected by the 5th amendment." (Docket Entry # 1).   Plaintiff, however, does agree that "the proper inquiry is set forth under the 14th Amendment" and that the "5th Amendment claim should be dismissed."   (Docket Entry # 16).

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . .."   U.S. Const. amend. V.   It is well established that, "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the states, from depriving any person of property without 'due process of law.'" Dusenbery v. United States, 534 U.S. 161, 167 (2002). Accordingly, the Fifth Amendment Due Process Clause applies "'only to actions of the federal government-not to those of state or local governments.'"   Martínez-Rivera v. Sánchez Ramos,

498 F.3d 3, 8 (1st Cir. 2007).

Here, as previously discussed, plaintiff's claim is against a state actor.  SCSD is not a federal agency and plaintiff's claim of a Fifth Amendment violation of the Due Process Clause (Count IV) must be dismissed.

III.  <u>Sixth Amendment Denial of Access to the Courts</u>

Also in the alternative, SCSD submits that plaintiff's Sixth Amendment claim stemming from a lack of access to legal materials must fail because SCSD is not amenable to suit under section 1983.  (Docket Entry # 10).  In support of this proposition, SCSD argues that state entities, such as SCSD, are not "persons" for purposes of section 1983 liability.  (Docket Entry # 10).  In Count V, plaintiff sets out a denial of access to courts claim under the Sixth Amendment for "destroying [plaintiff's] legal materials."  (Docket Entry # 1, ¶ 43).  Plaintiff acknowledges that "SCSD is not amenable to suit."  (Docket Entry # 16, p. 3).

It is undeniable that prisoners have a constitutional right of access to the courts.  <u>Boivin v. Black</u>, 225 F.3d 36, 42 (1st Cir. 2000), which is subject to redress under section 1983.  <u>See</u> <u>Ellis v. Viles</u>, 2010 WL 6465282 at *4 (D.Mass. August 26, 2010) (quoting <u>Lewis v. Casey</u>, 518 U.S. 343, 354 (1996)).  In the case at bar, however, SCSD is correct in arguing that "a state is not a person within the meaning of § 1983."  <u>Will v. Michigan Dep't</u>

of State Police, 491 U.S. at 64; see Canales v. Gatzunis, 979
F.Supp.2d 164, 171 (D.Mass 2013).

Plaintiff's Sixth Amendment claim (Count V) under section
1983 against SCSD is therefore subject to dismissal.
Plaintiff's assertion that SCSD's argument does not insulate the
John Doe correctional officers from an access to courts claim
against them in their individual capacity under section 1983,
while correct, is premature because these individuals have not
been served with process.  (Docket Entry # 16, pp. 2-3).

IV.  Fourteenth Amendment Due Process Claim

As an additional means to dismiss Count VI other than on
the basis of the Eleventh Amendment, SCSD contends that
plaintiff's Fourteenth Amendment Due Process Claim fails because
"adequate state post-deprivation remedies exist."  (Docket Entry
# 10).  In Count VI, plaintiff sets out a claim of being denied
reasonable access to courts under the Fourteenth Amendment
because defendants confiscated the legal materials in his cell.
(Docket Entry # 1).  Plaintiff cogently argues that the
availability of post-deprivation procedures does not bar the
access to courts claim which is based on the destruction of
legal materials.  (Docket Entry # 16).

It is not necessary to address the distinction, however,
because SCDS's immunity under the Eleventh Amendment provides a
basis to dismiss Count VI, as previously explained.  That said,

in the event the issue arises in the context of the claim against the individual John Doe Correctional Officers, they are instructed to address it.  To date, however, the officers have not been served with process.

V.   <u>MCRA Claim</u>

In the alternative, SCSD moves to dismiss the MCRA claim (Count VII).  SCSD submits that neither the Commonwealth nor its agencies is a "person" under the MCRA.  (Docket Entry # 10).

The MCRA provides a cause of action "[w]henever any *person* or *persons*, whether or not acting under color of law, interfere by threats, intimidation or coercion, . . . with the exercise or enjoyment . . . of rights secured by the constitution or laws of the United States."  Mass. Gen. Laws ch. 12, § 11H (emphasis added); <u>see</u> Mass. Gen. Laws ch. 12, § 11I.  As correctly pointed out by SCSD, the Commonwealth is not a "person" within the meaning of the MCRA.  <u>Maraj v. Massachusetts</u>, 836 F.Supp.2d 17, 30 (D.Mass. 2011) (although "MCRA authorizes suit against 'persons' acting under the color of law for the violation of constitutional or statutory rights, it is well settled that the Commonwealth and its agencies are not persons within the meaning of the MCRA"); <u>see</u> <u>Williams v. O'Brien</u>, 936 N.E.2d 1, 4 (Mass.App.Ct. 2010).  Because the Commonwealth, including its agencies, is not a "person" subject to suit under the MCRA, the MCRA claim against SCSD is subject to dismissal.

VI.    Intentional Tort Claims

SCSD next contends that the MTCA, Massachusetts General
Laws chapter 258, section 10 (c) ("section 10(c)"), provides
immunity to public employers for intentional torts committed by
public employees.  (Docket Entry # 10).  Accordingly, SCSD
argues that Count I (conversion) and Count VIII (intentional
infliction of emotional distress) should be dismissed.  (Docket
Entry # 10).

The MTCA "provide[s] 'a comprehensive and uniform regime of
tort liability for public employers.'"  Morrissey v. New England
Deaconess Ass'n-Abundant Life Communities, Inc., 940 N.E.2d 391,
399 (Mass. 2010).  The statute is liberally construed, id. at
401, and waives the sovereign immunity of the Commonwealth and
its municipalities by allowing suits against a public employer
"based on the negligent or wrongful conduct of public employees
who acted within the scope of their employment."  Martini v.
City of Pittsfield, 2015 WL 1476768, at *9 (D.Mass. March 31,
2015); see Daveiga v. Boston Public Health Comm'n, 869 N.E.2d
586, 589 (Mass. 2007) (chapter "258 replaced the common-law
scheme by which the Commonwealth and its municipalities enjoyed
immunity from suit for tortious wrongdoing, subject only to
miscellaneous exceptions"); Roberts v. Town of Bridgewater, 2015
WL 4550783, at *3 (D.Mass. July 28, 2015) ("public employers
maintain liability for the negligent acts of public employees

committed within the scope of their employment"); Mass. Gen. Laws ch. 258, § 2 ("[p]ublic employers shall be liable for injury . . . caused by the negligent or wrongful act" of "any public employee while acting within the scope of his office or employment").  Section 10 (c) excludes "claim[s] arising out of an intentional tort" from the reach of the waiver.  Mass. Gen. Laws ch. 258, § 10(c); see Barrows v. Wareham Fire District, 976 N.E.2d 830, 835 (Mass.App.Ct. 2012).  Simply stated, section 10(c) "expressly exempts intentional torts from its provisions, and therefore a public employer cannot be sued for the intentionally tortious conduct of its employee."  Barrows v. Wareham Fire District, 976 N.E.2d at 835.

The language of section 10(c) excludes "any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations."  Mass. Gen. Laws ch. 258, § 10(c) (emphasis added).  Furthermore, the word "including" indicates that the list is not all inclusive and that any intentional tort is protected by section 10(c).  See Barrows v. Wareham Fire District, 976 N.E.2d at 835.  Thus, while section 10(c) does not bar claims sounding in negligence, "governmental liability" does

not attach to "'any claim arising out of an intentional tort.'" Ortiz v. County of Hampden, 449 N.E.2d 1227, 1228 (Mass.App.Ct. 1983).

The intentional infliction of emotional distress claim set out in Count VIII of the complaint is based on intentional conduct.  The claim alleges that, "defendants behaved outrageously and intentionally by intimidating and inflicting pain, fear, mental anguish, unimaginable stress, depression, and loss of self worth, humiliation, anxiety and mental disorder on the plaintiff."  (Docket Entry # 1, ¶ 63).  As an intentional tort, it falls within the reach of section 10(c) and cannot be maintained against SCSD as the public employer.  See Parker v. Chief Justice for Administration and Management of the Trial Court, 852 N.E.2d 1097, 1103 (Mass.App.Ct. 2006) ("[w]ith respect to intentional torts, including intentional infliction of mental distress, claims against the public employer are barred" under section 10(c)).  Furthermore, the plain and unambiguous language of section 10(c) bars SCSD's liability under Count VIII for intentional infliction of emotional distress.  It is equally well established that the intentional tort of conversion is also barred by section 10(c) of the MTCA. See, e.g., Mason v. Massachusetts Dep't of Environmental Protection, 774 F.Supp.2d 349, 356 (D.Mass. 2011) (conversion claim barred by MTCA because "Commonwealth cannot be held liable

for any claim arising out of an intentional tort"). Accordingly, counts I and VIII against SCSD are subject to dismissal.

## VII.  Eighth Amendment Deliberate Indifference Claim

SCSD contends, again in the alternative, that the Eighth Amendment deliberate indifference claim (Count X) must be dismissed because SCSD, as a state agency, is not a "person" for purposes of section 1983 liability.  It is therefore not amenable to suit pursuant to section 1983.  (Docket Entry # 10).

As previously discussed in reference to plaintiff's Sixth Amendment claim (Count V), SCSD is correct in arguing that "a State is not a person within the meaning of § 1983."  Will v. Michigan Dep't of State Police, 491 U.S. at 64.  Therefore, the Eighth Amendment claim (Count X) against SCSD is subject to dismissal.

In sum, all of the claims against SCSD are subject to dismissal under the Eleventh Amendment on the basis of its immunity.  In the alternative, counts I, IV, V, VII, VIII and X are subject to dismissal for the reasons set out under Roman numerals II, III and V through VII.

### CONCLUSION

In accordance with the foregoing discussion, SCSD's motion

to dismiss (Docket Entry # 9) is **ALLOWED** as to all counts.


/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge