UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JASON LATIMORE,
    Plaintiff,

v.                                                          CIVIL ACTION NO.
                                                            14-13378-MBB

KENNETH TROTMAN,
RYAN DORGAN,
ROSEANNE BARROWS, and
SHERRIFF STEVEN TOMPKINS,
    Defendants.

**MEMORANDUM AND ORDER RE:**
**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
**(DOCKET ENTRY # 105)**

**August 23, 2017**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss filed
under Fed.R.Civ.P.12(b)(6) ("Rule 12(b)(6)") by defendants
Kenneth Trotman ("Trotman"), Ryan Dorgan ("Dorgan"), Roseanne
Barrows ("Barrows"), and Sheriff Steven Tompkins ("Tompkins")
(collectively "defendants"). (Docket Entry # 105). Plaintiff
Jason Latimore ("plaintiff") opposes the motion. (Docket Entry
# 108).

PROCEDURAL HISTORY

On August 14, 2014, plaintiff filed a pro se complaint
against Suffolk County House of Correction ("SCHOC") and two
John Doe Correction Officers. SCHOC timely filed a motion to
dismiss, which this court allowed on December 15, 2015. On

March 3, 2016, plaintiff filed an amended complaint identifying the John Doe defendants as Trotman and Dorgan. (Docket Entry # 37).

On June 13, 2016, this court allowed plaintiff's motion to amend the complaint to add Barrows and Tompkins as defendants. At an October 25, 2016 hearing, this court granted plaintiff leave to file another amended complaint. Plaintiff filed a third amended complaint on November 15, 2016. (Docket Entry # 100). The instant motion to dismiss is in response to this complaint. (Docket Entry # 105).

The governing amended complaint ("the complaint") sets out the following claims: (1) Count One for conversion against Trotman, Dorgan, and Barrows; (2) Count Two for violations of the First Amendment against Trotman and Dorgan; (3) Count Three for deprivation of counsel in violation of the Sixth Amendment against Trotman and Dorgan; (4) Count Four for deprivation of due process in violation of the Fourteenth Amendment against Trotman, Dorgan, and Barrows; (5) Count Five for violations of the Massachusetts Civil Rights Act, Massachusetts General laws chapter 12, section 11I ("MCRA") against Trotman, Dorgan, and Barrows; (6) Count Six for intentional infliction of emotional distress ("IIED") against Trotman, Dorgan, and Barrows; (7) Count Seven for improper supervision resulting in the destruction of legal materials in violation of the Fourteenth

Amendment against Barrows; (8) Count Eight for failing to train, supervise, and discipline as well as for fostering a hostile work environment resulting in violations of the Eighth and Fourteenth Amendments against Tompkins; and (9) Count Nine for breaches of equal protection and due process and acts of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments against all defendants. Plaintiff asserts the foregoing claims against defendants in their official and individual capacities. (Docket Entry # 100, 18-19).

Against Trotman and Dorgan individually, plaintiff asserts claims for conversion; First Amendment violations; Sixth Amendment violations; Eighth Amendment violations; Fourteenth Amendment violations; MCRA violations; and IIED. As against Barrows individually, plaintiff asserts a claim for conversion; Eighth and Fourteenth Amendment violations; MCRA violations; and IIED. As against Tompkins, plaintiff alleges Eighth and Fourteenth Amendment due process and equal protection violations.

Defendants move to dismiss all claims made against them in their official capacity. (Docket Entry # 105). In the opposition to the defendants' motion to dismiss, plaintiff concedes that all such claims should be dismissed. (Docket Entry # 108). Trotman, Dorgan, and Barrows further move under Rule 12(b)(6) to dismiss Count Five alleging a violation of the

MCRA, Count Six alleging the IIED claim, and Count Nine with respect to the alleged equal protection violation. (Docket Entry ## 105, 106). Tompkins seeks to dismiss "all counts" asserted against him, i.e. counts eight and nine, because he did not participate in the underlying incidents and respondeat superior does not apply to section 1983 claims. (Docket Entry # 106). He also asserts a qualified immunity defense. (Docket Entry ## 105, 106).

## STANDARD OF REVIEW

To survive a Rule (12)(b)(6) motion to dismiss, the complaint must include factual allegations that when taken as true demonstrate a plausible claim to relief even if actual proof of the facts is improbable. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-58 (2007). Thus, while "not equivalent to a probability requirement, the plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Boroian v. Mueller</u>, 616 F.3d 60, 65 (1st Cir. 2010) (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not show[n] that the pleader is entitled to relief." <u>Feliciano-Hernández v. Pereira-Castillo</u>, 663 F.3d 527, 533 (1st Cir. 2011) (internal quotation marks and citations omitted).

4

Taking the facts in the governing complaint as "true and read in a plaintiff's favor" even if seemingly incredible, the complaint "must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of Puerto Rico, 628 F.3d 25, 29-30 (1st Cir. 2010). "[A]ccepting . . . all well-pleaded facts in the complaint and making all reasonable inferences in the plaintiff's favor," Boroian v. Mueller, 616 F.3d at 64, the "factual allegations 'must be enough to raise a right to relief above the speculative level.'" Gorelik v. Costin, PA-C, 605 F.3d 118, 121 (1st Cir. 2010). Drawing reasonable inferences in plaintiff's favor but eschewing reliance on "'bald assertions, . . . unsubstantiated conclusions,'" Fantini v. Salem State College, 557 F.3d 22, 26 (1st Cir. 2009), and legal conclusions, see Dixon v. Shamrock Financial Corp., 522 F.3d 76, 79 (1st Cir. 2008) (rejecting unsupported conclusions or interpretations of law in reviewing Rule 12(b)(6) dismissal), the complaint sets out the following facts.

FACTUAL BACKGROUND

On May 29, 2014, plaintiff, then serving a sentence at SCHOC, was playing basketball on the recreation deck of the 3-2 unit when a disturbance occurred in the day room. (Docket Entry # 100, p. 4). Plaintiff and other inmates noticed the Sheriff's Escort and Response Team ("SERT") respond to the

5

event and approached the day room to see what caused the disturbance. (Docket Entry # 100, p. 4). None of the inmates was wearing their uniform tops. (Docket Entry # 100, p. 4). Plaintiff and the other inmates were approximately 20 feet into the unit when Correction Officer Allen[1] ("Allen") ran into the unit and yelled at the inmates who had left the deck. (Docket Entry # 100, p. 4). While the other inmates returned to the deck, plaintiff waived five fingers at Allen and told him to calm down. (Docket Entry # 100, p. 4).

As the inmates resumed the basketball game, Allen entered the deck and instructed no one in particular to "lock in." (Docket Entry # 100, p. 4). When all of the inmates on the deck reached for their uniforms and gear, Allen indicated he was referring to plaintiff. (Docket Entry # 100, p. 4). Plaintiff asked Allen why he wanted him to lock in and Allen then radioed the SERT team that plaintiff had refused an order. (Docket Entry # 100, p. 4). Video recording of the event shows plaintiff's arm outstretched in an attempt to retrieve his uniform before Allen called SERT to respond. (Docket Entry # 100, p. 4).

---

[1] The complaint does not provide a first name for this individual.

Before he was escorted out of the unit and placed in segregation, plaintiff reminded Allen and Sergeant Sullivan[2] ("Sullivan") to secure his legal materials. (Docket Entry # 100, p. 4). Plaintiff's cell was "located directly behind the CO's desk." (Docket Entry # 100, p. 5). Prior to this incident, Allen and Sullivan targeted plaintiff with "constant harassment, threats, and intimidation" and both officers previously commented with "disgust" and "animus" about plaintiff's pro se litigant status and daily legal studies. (Docket Entry # 100, pp. 4-5).

Once in segregation, plaintiff spoke to an unidentified sergeant and requested he call Barrows and instruct her to oversee or assign someone other than Allen or Sullivan to inventory his cell. (Docket Entry # 100, p. 5). The sergeant indicated he would do so immediately. (Docket Entry # 100, p. 5). Ultimately, plaintiff believes that Dorgan was assigned to inventory the property in plaintiff's cell. Additionally, plaintiff believes that Trotman, who was later terminated from the Suffolk County Sheriff's Department ("SCSD"), assisted Dorgan in the inventory.[3] (Docket Entry # 100, p. 5).

---

[2] The complaint does not provide a first name for this individual.

[3] Plaintiff indicates that future discovery and preserved video footage may clarify who exactly inventoried his cell. (Docket Entry # 100, p. 5). Plaintiff also notes future discovery may indicate Allen and Sullivan ordered the disposal of his legal

At around 11:30 that night, Dorgan brought plaintiff's property to segregation. (Docket Entry # 100, p. 5). Although it is unclear whether he actually inventoried the property, Dorgan initialed and signed the inventory form. (Docket Entry # 100, p. 5). Because the form was not complete, however, plaintiff refused to sign it. (Docket Entry # 100, p. 5). Although the form indicated plaintiff was given "Miscellaneous: Legal Mail," plaintiff never received this property. (Docket Entry # 100, p. 6). The current location of this material is unknown and plaintiff contends it was "confiscated and destroyed." (Docket Entry # 100, p. 6). When plaintiff demanded the return of his legal materials, Dorgan stated he "'had no knowledge of the whereabouts of any legal materials.'" (Docket Entry # 100, p. 6).

Plaintiff ultimately received a disciplinary report for the May 29th incident with Allen. (Docket Entry # 100, p. 5). He was found guilty of two of the four alleged infractions. (Docket Entry # 100, p. 5).

Video recording shows Barrows present for all events. (Docket Entry # 100, p. 6). Plaintiff contends Barrows condoned, acquiesced, and allowed the disposal of plaintiff's legal and non-legal property by Dorgan, Trotman, and possibly

materials and property and therefore may dictate the addition of these individuals as parties. (Docket Entry # 100, p. 5).

Sullivan and Allen. (Docket Entry # 100, p. 6). Because
plaintiff filed formal grievances against these officers prior
to the May 29, 2014 incident, Barrows and "the administration"
had prior knowledge of the "retaliatory, threatening and
coercive actions of" Allen and Sullivan. (Docket Entry # 100,
p. 6). Prior to the inventory of plaintiff's cell, Barrows was
made aware of the potential for violations in policy regarding
inmate property. (Docket Entry # 100, p. 6). Further, Barrows
witnessed and was present during and after the incident which
led to the violations of the property policy.[4] (Docket Entry #
100, p. 6).

On June 3, 2014, plaintiff was released from segregation.
(Docket Entry # 100, p. 6). Sergeant Depina[5] brought plaintiff
some of his property from booking including a box of legal cases
from inmate legal services and assorted canteen items. (Docket
Entry # 100, p. 6). The rest of his property, however, was
missing. (Docket Entry # 100, p.6). Plaintiff filed five

---

[4]  Massachusetts regulations require that, "Any item of property
removed by an officer from an inmate's living quarters . . .
shall be forwarded to the property officer who shall inventory
and store such property until . . . it is disposed of . . .."
103 C.M.R. § 403.15. A separate regulation restricts the size
of legal documents an inmate can keep in his cell. 103 C.M.R. §
403.10(7)(f). The foregoing regulations do not create liability
for the loss or destruction of items in an inmate's cell beyond
what "already exist[s] under established law." 103 C.M.R. §
403.20.
[5]  The complaint does not provide a first name for this
individual.

grievances regarding the confiscation but received no response from property staff. (Docket Entry # 100, p. 6). Plaintiff contends that, without his legal materials, he was unable to adequately defend himself in three pending criminal cases. (Docket Entry # 100, p. 6). Plaintiff contends the disposal of his legal work was egregious, malicious, and intentional. (Docket Entry # 100, p. 6).

After plaintiff filed three to five grievances, internal affairs conducted a recorded interview with plaintiff relative to the lost "legal materials and lost personal paperwork." (Docket Entry # 100, p. 6). The Sherriff's Investigative Division possesses institutional video recordings depicting Trotman and Dorgan taking plaintiff's property from his cell onto an elevator. (Docket Entry # 100, p. 7).

On August 7, 2014, Trotman ransacked all of plaintiff's legal materials during a cell search. (Docket Entry # 100, p. 7). At the time, Trotman told plaintiff "he had better throw away some of this trash or he would do it for him." (Docket Entry # 100, p. 7). Trotman then looked at the mess and asked plaintiff if he was a pro se defendant. (Docket Entry # 100, p. 7). The next day, plaintiff completed his sentence. (Docket Entry # 100, p. 7).

The location of plaintiff's missing legal work – some 80 pounds of material including his case law study, notes,

discovery, grand jury materials, and written motions – is
unknown. (Docket Entry # 100, p. 7). Plaintiff was unable to
secure copies of his legal paperwork from either the court or
prior counsel. (Docket Entry # 100, p. 7). Plaintiff is also
missing three legal pads of music lyrics, one legal pad of a
screenplay, one legal pad of a business plan, and one loose-leaf
notebook of business plans. (Docket Entry # 100, p. 7).
Plaintiff contends that the confiscation of his legal materials
"derailed his defenses" and "mooted multiple arguments he had
fully developed," and accordingly he was denied full access to
the courts. (Docket Entry # 100, p. 8).

Although Tompkins was not an actual participant in these
events, plaintiff contends that Tompkins, as the highest elected
official, sets the "standard operating procedure" relative to
regulations, policies, employee training, employee supervision,
work environment practices, administration of continued
training, and disciplinary actions for official misconduct.
(Docket Entry # 100, pp. 7-8). Plaintiff further alleges that
non-parties Allen and Sullivan subjected him to arbitrary
disciplinary action, verbal abuse, harassment, retaliation, and
coercion on various dates throughout 2014, and that future
discovery will disclose evidence that provides a basis to add
Allen and Sullivan as parties. (Docket Entry # 100, p. 3-4).

DISCUSSION

11

I.   MCRA (Count Five)

     Trotman, Dorgan, and Barrows seek dismissal of the MCRA

claims due to the absence of any threats, intimidation, or

coercion.  (Docket Entry # 106, pp. 11-12).  Plaintiff concedes

that Count Five against Barrows must be dismissed, but argues

that Trotman and Dorgan remain liable because their actions did

in fact constitute threats, intimidation, or coercion.  (Docket

Entry # 108, pp. 3-4).

     To establish a claim under the MCRA, a plaintiff "must

prove that (1) [his] exercise or enjoyment of rights secured by

the Constitution or laws of either the United States or of the

Commonwealth, (2) have been interfered with, or attempted to be

interfered with, and (3) that the interference or attempted

interference was by 'threats, intimidation or coercion.'"

Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 337

(Mass. 1996).  The MCRA is "'explicitly limited . . . to

situations where the derogation of secured rights occurs by

threats, intimidation or coercion,' almost always arising in the

context of a of [sic] physical confrontation."  Tedeschi v.

Reardon, 5 F.Supp. 2d 40, 46 (D. Mass. 1998) (quoting Bally v.

Northeastern University, 532 N.E.2d 49, 52 (Mass. 1989)); cf.

Redgrave v. Boston Symphony Orchestra, Inc., 502 N.E.2d 1375,

1376 (Mass. 1987) (affirming claim of contractual coercion).

"Direct violations of rights, even if unlawful, are not subject

to liability under the MCRA unless they are accompanied by a further attempt to force the plaintiff to take some action." Walsh v. Town of Lakeville, 431 F.Supp. 2d 134, 151 (D. Mass. 2006).

For purposes of the MCRA, a "'threat' . . . involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm . . . 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct . . . [Coercion involves] 'the application to another of such force, either physical or moral, as to constrain [a person] to do against his will something he would not otherwise have done.'" Id. at 149-150 (quoting Planned Parenthood League of Mass. Inc. v. Blake, 631 N.E.2d 985, 990 (Mass. 1994)). Courts in Massachusetts use "a reasonable person standard in determining whether a defendant's conduct constitutes such threats, intimidation, or coercion." Glovsky v. Roche Bros. Supermarkets, 17 N.E.3d 1026, 1035 (Mass. 2014). "A claim under the act is properly dismissed where the allegations in the plaintiff's complaint fail to satisfy this standard." Id.

Here, plaintiff concedes that Count Five against Barrows should be dismissed and only pursues the MCRA claims against Trotman and Dorgan. Plaintiff alleges that Dorgan and Trotman violated the MCRA on May 29, 2014, when plaintiff's property was taken. (Docket Entry # 108, p. 3). Nonetheless, plaintiff does

not plead any facts that show any threats, intimidation, or coercion as defined by Walsh v. Town of Lakeville, 431 F.Supp. 2d at 149-150.  Plaintiff offers no evidence of verbal or physical threats, the use of fear, or any force used against plaintiff to make him do something against his will. Significantly, plaintiff was in a segregation unit and not present in the cell with Trotman and Dorgan when the property was taken and could not have been subject to threats, intimidation, or coercion by them at that time.  (Docket Entry # 100, ¶ 17).

Similarly, the complaint reflects no facts suggesting threatening, intimidating, or coercive statements or actions when Dorgan attempted to coerce plaintiff into signing the inventory form.  (Docket Entry # 100, pp. 5-6).  Plaintiff offers no fear-inducing statements or actions by Dorgan, and he notes he did in fact sign the form.  (Docket Entry # 100, ¶ 22). Therefore, there is no basis for any MCRA claims against Dorgan, which are therefore subject to dismissal.

The complaint, however, sets out another incident that occurred on August 7, 2014, when Trotman entered plaintiff's cell for a cell search.  (Docket Entry # 100, ¶ 29) (Docket Entry # 108, pp, 3-4).  As stated in the complaint, Trotman told plaintiff "he had better throw away some of his trash or he would do it for him.  Then [Trotman] looked at all the mess and

asked the plaintiff if he was pro se." (Docket Entry # 100, ¶ 29). These statements could plausibly be interpreted as threatening, intimidating, or coercive. The MCRA claim in Count Five against Trotman therefore remains in this action only as it relates to this single incident.

## II.  IIED Claim (Count Six)

Defendants also seek to dismiss Count Six alleging liability for IIED. They argue that none of the alleged conduct, even if true, is extreme or outrageous enough as required by Massachusetts law. (Docket Entry # 106, pp. 12-13). Plaintiff disputes this and argues that the actions of Trotman, Dorgan, and Barrows were in fact sufficiently extreme and outrageous. (Docket Entry # 108, pp. 4-8).

Liability for IIED requires the plaintiff to establish: (1) "that the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct"; (2) "that the conduct was 'extreme and outrageous,' 'was beyond all possible bounds of decency,' and was 'utterly intolerable in a civilized community'"; (3) "that the actions were the cause of the plaintiff's distress; and" (4) "that the emotional distress sustained by the plaintiff was 'severe' and of a nature that no reasonable person 'could be expected to endure.'" Thorpe v. Mutual of Omaha Insurance

Company, 984 F.2d 541, 545 (1st Cir. 1993) (quoting Agis v.
Howard Johnson Company, 355 N.E.2d 315, 318-319 (Mass. 1976)).

Defendants argue there are no facts to support any conduct
rising to the required level of "extreme or outrageous beyond
bounds of decency." (Docket Entry # 106, p. 12). Specifically,
they maintain that the alleged loss of property on May 29, 2014,
and Trotman's statements on August 7, 2014 do "not rise to
outrageous conduct beyond the all bounds [sic] of decency and is
utterly intolerable." (Docket Entry # 106, p. 13).

As articulated by the Massachusetts Supreme Judicial Court:

> Liability for "extreme and outrageous" conduct "cannot
> be predicated upon 'mere insults, indignities,
> threats, annoyances, petty oppressions, or other
> trivialities,' nor even is it enough 'that the
> defendant . . . has intended to inflict emotional
> distress, or even that his conduct has been
> characterized by "malice," or a degree of aggravation
> which would entitle the plaintiff to punitive damages
> for another tort'; rather, '[l]iability [may be] found
> only where the conduct has been so outrageous in
> character, and so extreme in degree, as to go beyond
> all possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized
> community.'"

Roman v. Trustees of Tufts Coll., 964 N.E.2d 331, 341 (Mass.
2012) (quoting Foley v. Polaroid Corp., 508 N.E.2d 72, 82 (Mass.
1987)).

The first allegation to support the IIED claim stems from
the removal and disposal of plaintiff's legal work from his cell
on May 29, 2014. Plaintiff is a pro se litigant and his missing

papers include 80 pounds of hand-written legal research, notes, and motions in relation to his own cases. (Docket Entry # 100, p. 7). It is plausible that the reckless or intentional disposal of the entirety of a pro se litigant's legal work while his cases were still pending could be considered extreme and outrageous. Additionally, it is plausible that such action would cause the severe emotional distress that plaintiff pleads he suffered. (Docket Entry # 100, p. 4). As noted in the complaint, plaintiff experienced "mental anguish," and self-medicated with "excessive alcohol abuse, marijuana use, and cocaine consumption to numb this reality." (Docket Entry # 100, ¶¶ 76-77). The motion to dismiss the IIED claim stemming from this incident on May 29, 2014 is denied.

The second allegation to support the IIED claim relates to plaintiff's August 7, 2014 encounter with Trotman. Plaintiff submits that Trotman caused him severe emotional distress when he told plaintiff "he had better throw away some of his trash or he would do it for him. Then [Trotman] looked at all the mess and asked the plaintiff if he was pro se." (Docket Entry # 100, ¶ 29). This statement, although possibly threatening or intimidating, is not extreme or outrageous enough as is required to make a claim of IIED. Even if interpreted as intentional and malicious comments, it is an insufficient threat or indignity as described by the court in Roman v. Trustees of Tufts Coll., 964

N.E.2d at 341.  The statement and subsequent question simply do
not "go beyond all possible bounds of decency, and to be
regarded as atrocious, and utterly intolerable in a civilized
community."  Id. (internal quotation marks omitted).  All IIED
claims arising from this incident are dismissed.

III.  Equal Protection (Count Nine)

       Defendants argue that Count Nine alleging inter alia an
equal protection violation must be dismissed because plaintiff
fails to plead a prima facie case.  More specifically, they
contend that the complaint fails to set out that plaintiff "was
similarly situated to other persons; that he was treated any
differently than similarly situated individuals by any of the
Defendants; or that any Defendant used impermissible
considerations in treating him differently."  (Docket Entry #
106, pp. 13-14).  Plaintiff responds that he is similarly
situated to all prisoners on the basis they are all
incarcerated, he is treated differently because of his status as
a pro se litigant, and that Trotman, Dorgan, and Barrows all
acted in bad faith.  (Docket Entry # 108, pp. 8-9).

       The Equal Protection Clause of the Fourteenth Amendment
requires states to treat all similarly situated persons equally.
Plyler v. Doe, 457 U.S. 202, 216 (1982).  Equal Protection
Clause claims are reviewed under a rational basis standard when
the state action does not burden a suspect class.  Heller v.

18

Doe, 509 U.S. 312, 319 (1993).  Under a rational basis review,
plaintiff must show that there is no rational relationship
between the disparity of treatment and any legitimate government
purpose.  Id. at 320.

As explained by the First Circuit, in order:

"[F]or an equal protection claim to survive a motion
to dismiss, a plaintiff must allege facts plausibly
demonstrating that '"compared with others similarly
situated, [the plaintiff was] selectively treated . .
. based on impermissible considerations such as race,
religion, intent to inhibit or punish the exercise of
constitutional rights, or malicious or bad faith
intent to injure a person."'"

Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 106 (1st Cir.
2015), cert. denied, 136 S. Ct. 808 (2016) (citations omitted).

Here, plaintiff does not contend that he is a member of a
suspect class.  Accordingly, a rational basis standard of review
applies.  The complaint pleads no facts showing that plaintiff
is similarly situated to anyone.  Plaintiff neither discusses
any other prisoners or how their treatment by one or more
defendants evidences a disparity.  Plaintiff's response that he
is similarly situated with all prisoners on the basis that they
are all incarcerated (Docket Entry # 108) is likewise
insufficient as it contains no facts establishing who
specifically he is similarly situated to and any disparity in
treatment.  In short, plaintiff does not plead sufficient facts

to establish a plausible claim and the equal protection claim in
Count Nine is therefore dismissed.

IV.  <u>Tompkins' Liability (Counts Eight and Nine)</u>

Tompkins moves to dismiss "all counts," i.e., counts eight
and nine, against him for failure to state a claim under Rule
12(b)(6).  Relying on a statement in the complaint wherein
plaintiff acknowledges that Tompkins was "not an active
participant in the . . . incidents" (Docket Entry # 100, ¶ 33),
Tompkins submits that his lack of participation warrants a
dismissal of the claims against him.  (Docket Entry # 106, p.
15).  Tompkins argues that, because there is no respondeat
superior liability in section 1983 claims, he can only be held
accountable for his own actions.  In addition, Tompkins
maintains he is entitled to qualified immunity.

Plaintiff responds that he is not seeking to impose
liability against Tompkins on the basis of his employee's
actions, but on the basis of Tompkins' own inaction by failing
to train, supervise, and discipline his employees, and for
fostering a hostile work environment.  (Docket Entry # 108, p.
9).  Plaintiff maintains Tompkins is liable because of his
"inaction as it pertains to the administration of training,
discipline and conditions of confinement, which undoubtedly led
to the subordinates' behavior because of the Sheriff's
condonation and acquiescence through dereliction of those

responsibilities." (Docket Entry # 108, p. 9). Plaintiff argues that discovery will produce more evidence to support these claims. (Docket Entry # 108, p. 9).

Examining the counts at issue, Count Eight seeks to impose liability under the Eighth and Fourteenth Amendments on the basis of Tompkins' failure to supervise, train, and discipline Sullivan, Allen, Trotman, Dorgan, and Barrows to comply with the policies, procedures, and regulations for "inmate property and legal materials." (Docket Entry # 100, ¶¶ 88-89). Count Eight alleges a "widespread failure to discipline" these officers and that Tompkins, as sheriff, "has the final policy making authority delegated to him by the legislative body of Suffolk County" consisting of the "County Commissioners and Penal Commissioner of the City of Boston." (Docket Entry # 100, ¶ 88).

Count Nine seeks to impose liability against Tompkins under the Eighth Amendment for his "gross negligence and deliberate indifference to" plaintiff's suffering resulting from the destruction of his personal property and his legal material in the three "pending criminal cases." (Docket Entry # 100, p. 17). The destruction led "to the inability to mount a meaningful defense" and "played a decisive role in his convictions thereafter." (Docket Entry # 100, p. 17).

Turning to the supervisory liability argument, it is well settled that, "government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "Supervisory liability may be imposed only if either (1) the supervisor is a direct participant in the alleged rights-violating incident or (2) the responsible official supervises, trains, or hires a subordinate with deliberate indifference to the possibility that deficient performance may eventually result in a civil rights violation." Reis v. Lombardi, C.A. No. 15-423-ML, 2016 WL 1626664, at *5 (D.R.I. Mar. 16, 2016), report and recommendation adopted, No. CV 15-423-ML, 2016 WL 1611116 (D.R.I. Apr. 21, 2016) (quoting Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009).

Plaintiff's reliance on the existence of "[t]he sheriff" as being "the highest elected official to set 'standard operating procedure[s],' regulations, [and] policies" (Docket Entry # 100, ¶ 88) is misguided. These terms commonly refer to imposing liability on a municipality as opposed to a high level official. See Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-404 (1997); Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011). That said, plaintiff correctly notes that Tompkins can be liable for his "inaction as it pertains to the administration of training, discipline and conditions of

confinement." (Docket Entry # 108, p. 9). Plaintiff also aptly recognizes "there is no respondeat superior liability under" section 1983. (Docket Entry # 108, p. 9).

Thus, "section 1983 liability cannot rest solely on a defendant's position of authority." Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 16 (1st Cir. 2011). In order to state a claim, the complaint must "allege causation with facts sufficient to show a strong and affirmative causal link between the supervisor's participation, condonation or tacit authorization and the underlying violation by the subordinate, such that the supervisor's conduct inexorably led to the violation." Reis, 2016 WL 1626664, at *5. "'A sufficient casual nexus may be found if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct.'" Nascarella v. Cousins, No. 13-CV-10878-IT, 2015 WL 1431054, at *9 (D. Mass. Mar. 27, 2015) (quoting Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994)). "A plaintiff may also show causation through 'a known history of widespread abuse sufficient to alert a supervisor to ongoing violations.'" Nascarella, 2015 WL 1431054, at *9 (quoting Ramírez-Lluveras, 759 F.3d, 10, 20 (1st Cir. 2014)). As explained in Reis:

> The facts allegedly known to the supervisor must
> amount to more than isolated instances of
> unconstitutional activity; the pleading must

> demonstrate a known history of widespread abuse
> sufficient to alert a supervisor to the foreseeability
> of a grave risk of ongoing violations.  Even when
> rights are being systematically violated by a pattern
> of misconduct committed by a "single 'bad apple,'"
> such abuses may be sufficiently egregious to warrant
> supervisory liability.

Reis, 2016 WL 1626664, at *5 (internal citations omitted).

"'Isolated instances of unconstitutional activity ordinarily are insufficient' to establish supervisory liability." Nascarella, 2015 WL 1431054, at *9 (quoting Maldonado-Denis, 23 F.3d at 582).

Additionally, a "'plaintiff must show that the official had actual or constructive notice of the constitutional violation'" yet remained *deliberately indifferent*. Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533-534 (1st Cir. 2011) (quoting Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 768 (1st Cir. 2010)).  Deliberate indifference requires the plaintiff to "show (1) that the officials had knowledge of facts, from which (2) the official[s] can draw the inference (3) that a substantial risk of serious harm exists." Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 20 (1st Cir. 2014) (internal quotations omitted); see Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998) (noting that this formulation implies the necessary showing of causation as well as deliberate indifference).

"To sustain a claim for supervisory liability based on a failure to train, a plaintiff must show that an 'identified

deficiency in . . . training . . . [is] closely related to the ultimate injury.'" Nascarella, 2015 WL 1431054, at *10 (quoting City of Canton v. Harris, 489 U.S. 378, 391, (1989)). "'Showing that a single individual received inadequate training is insufficient . . .; the training program as a whole must be found faulty.'" Id. (quoting Calvi v. Knox Cnty., 470 F.3d 422, 429 (1st Cir. 2006)); see Santiago, 891 F.2d 373, 382 (claimed deficiencies in management of training program, without allegations that the training itself was deficient or "inferior by standards of the profession," insufficient to show liability). "A single incident of misconduct, even if egregious, is generally insufficient to find supervisors liable for their failure to supervise or discipline subordinates." Nascarella, 2015 WL 1431054, at *11.

Here, plaintiff argues that Tompkins was "deliberately indifferent to his duties" through his failure to train and supervise his employees and there was "a widespread failure to discipline Sgt. Sullivan, CO Allen, CO Trotman, CO Dorgan and LT. Barrows" despite the "amount of complaints and reports" regarding their misconduct. (Docket Entry # 108, pp. 9-12) (Docket Entry # 100, ¶ 91). Plaintiff submits that these complaints and reports were enough to put Tompkins on actual or constructive notice, as required to impose liability. (Docket Entry # 108, pp. 10-11). Yet, plaintiff pleads no facts

regarding any of these reports or any of the prior instances of misconduct by Trotman or others. The complaint does not describe the type of prior incident including whether it involved similar incidents of destruction of property. The complaint also lacks any details describing the officers' training and any alleged deficiencies in the training program. Although the complaints allege that Tompkins failed to properly train Sullivan, Allen, Trotman, Dorgan, and Barrows to comply with policies regarding "inmate property and legal materials," there is no indication if the complaints and reports involved violations of inmate property or legal materials. The two incidents in May and August 2014 are not enough to raise a plausible claim that Tompkins' failure to train or supervise Sullivan, Allen, Trotman, Dorgan, and/or Barrows was deliberately indifferent. Furthermore, plaintiff offers no facts regarding any specific actions or inactions taken by Tompkins personally. Instead plaintiff merely offers the impermissible "conclusions" and "naked assertions devoid of further factual enhancement" discussed by the court in <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678. For these reasons, the Eighth Amendment deliberate indifference claim as to Tompkins in Count Nine is dismissed without prejudice.

As plaintiff suggests, discovery may nonetheless uncover the necessary link to attach liability to Tompkins. For

example, the personnel file of Trotman, who remains in this action and is therefore subject to discovery, may contain a history of documented misconduct that plaintiff alleges should have put Tompkins on notice. Thus, in the event further discovery uncovers a factual basis to impose supervisory liability on Tompkins, plaintiff may file a motion for leave to amend the complaint to include Tompkins.

As a final matter, because Tompkins does not develop his qualified immunity defense with sufficient specificity and detail, the defense is waived for purposes of this motion. As the First Circuit explained in Guillemard-Ginorio v. Contreras-Gomez, 490 F.3d 31, 37 (1st. Cir. 2007):

> [T]he qualified immunity section of [defendants']
> summary judgment motion never even mentioned the words
> "First Amendment," "political discrimination," or
> "retaliation." We cannot say that Defendants' three
> sentences speaking to qualified immunity "broadly" . .
> . satisfied their duty "to spell out [their] arguments
> squarely and distinctly." Paterson-Leitch Co. v.
> Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990 (1st
> Cir. 1988). Accordingly, we hold that the district
> court did not abuse its discretion in holding that
> Defendants waived their qualified immunity defense to
> the First Amendment claims.

Likewise, defendants' qualified immunity section in their brief fails to identify any specific constitutional amendment. See Guillemard-Ginorio, 490 F.3d at 37 (motion's failure to even mention "first amendment" or similar phrase provided basis to affirm lower court's waiver finding). It also fails to identify

or articulate any applicable clearly established law.  The fact that Tompkins was "not an actual participant in the incident[s]" (Docket Entry # 100, ¶ 33) does not mean he failed to supervise or train the underlying officials involved in the alleged incidents.  In short, Tompkins waived the qualified immunity argument for purposes of the motion to dismiss only.  <u>See</u> <u>Coons v Industrial Knife Co., Inc.</u>, 620 F.3d 38, 44 (1st Cir. 2010) (district court free to disregard argument not developed in party's brief).

CONCLUSION

In accordance with the forgoing discussion, the motion to dismiss (Docket Entry # 28) is **ALLOWED** as to all claims against defendants in their official capacities; Count Five against Barrows and Dorgan; Count Five against Trotman as it relates to the May 29, 2014 incident; Count Six as it relates to the August 7, 2014 incident; the equal protection claims in Count Nine; Count Eight against Tompkins; and the Eighth Amendment claim in Count Nine against Tompkins.  The motion is otherwise **DENIED**. The dismissal of the claims against Tompkins is without prejudice.

 /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge