```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
```

JASON LATIMORE,
    Plaintiff,

    v.                                                      CIVIL ACTION NO.
                                                              14-13378-MBB

KENNETH TROTMAN, RYAN DORGAN,
ROSEANNE BARROWS, RICHARD LIBBY,
PAULA SULLIVAN, and DANIEL ALLEN,
    Defendants.

**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S REQUEST FOR A COURT ORDER**
**(DOCKET ENTRY # 274)**

**September 29, 2021**

**BOWLER, U.S.M.J.**

      In opposing a summary judgment motion (Docket Entry # 242), plaintiff Jason Latimore ("plaintiff") filed as exhibits four compact discs purportedly containing video content. (Docket Entry # 253). Unable to access the video, this court contacted the court's Information Technology Department ("IT Department"). The IT Department was also unable to "access the files because they are zipped and because they are unable to run on the Windows-based operating system used by the court." (Docket Entry # 271, p. 2). As stated in a July 2021 Procedural Order, the four video compact discs "contain files ending with the extension 'JS.exe'" with "unknown executable applications that raise security concerns." (Docket Entry # 271, p. 2).

As a result, this court returned the four inaccessible compact discs to plaintiff and afforded him an opportunity to refile the same data on a compact disc or USB without zipped files in an acceptable video file format. (Docket Entry # 271, p. 2). Plaintiff filed a response to the Procedural Order outlining the difficulties he faced in custody to format the four compact discs. (Docket Entry # 274, p. 2). The response points out that defendants Kenneth Trotman, Ryan Dorgan, Roseanne Barrows, Paula Sullivan, Daniel Allen, and Richard Libby ("defendants") produced the four compact discs, which plaintiff describes as video footage from cameras at the Suffolk County House of Correction ("SCHOC") (Docket Entry # 274, p. 1, ¶ 2) (Docket Entry # 256, ¶¶ 44-101), during discovery. As a solution, plaintiff requests a court order: requiring defendants to provide him with "any and all video surveillance"; and, after he inspects the video surveillance evidence to ensure it is neither edited nor altered "from the original disclosures in the discovery phase," plaintiff will forward the video surveillance evidence "to the court in the format defendants furnish it." (Docket Entry # 274, pp. 2-3).

After plaintiff filed the response, this court contacted the IT "Department a second time and inquired if there [was] any way to obtain access to the files consistent with security concerns." (Docket Entry # 276). The IT Department suggested "that a

Macintosh laptop with a disc drive not connected to the court's network might be able to access the video footage," whereupon this court issued a second Procedural Order instructing plaintiff to return the four compact discs and that, "[o]nce received, this court will attempt again to access the video footage within the discs."  (Docket Entry # 276).

Plaintiff complied by returning the discs, and this court attempted to access all four compact discs using two different versions of Macintosh laptop computers not connected to the court's network drive.  The video was not accessible and, at this juncture, the video files are not in a Windows-compatible format or a Macintosh-compatible format.[1]  In a further effort to obtain guidance to access the video, this court again reached out to the IT Department.  According to the department, video files with the extension JS.exe originate from a system which outputs the data to the JS.exe executable file.  Viewing these executable files requires installation of a software program, which the court does not have, according to the IT Department.  Furthermore, the court does not install external, unapproved software programs on court

---

[1] See, e.g., D. Golmakani v. Secretary of Health and Human Services, No. 11-577V, 2013 WL 4009664, at *1 n.4 (Fed. Cl. July 7, 2013) (encountering difficulty accessing "Mac and Final Cut Pro compatible versions" of video because "format available for Court filings is Windows-based," although eventually accessing most of video with "assistance of the Court's IT staff," except video files in "Final Cut Pro format").

3

devices because of the security concerns, according to the IT Department.

## DISCUSSION

"[S]urveillance videos can often only be viewed through specialized software." Lee v. City of Troy, 1:19-CV-473, 2021 WL 1318105, at *2 (N.D.N.Y. Apr. 8, 2021). Moreover, a party cannot "reasonably expect[] the Court to wade into the internet in hopes of finding the one program it needed to view [a] video . . . regardless of the resulting security risks." Id. As explained above and in the Procedural Order, the four compact discs with the extension JS.exe raise security concerns. (Docket Entry # 271, p. 2).

With respect to plaintiff's requests, plaintiff is likely correct that it was defendants who originally produced the video footage in the four compact discs because the footage purportedly depicts May 2014 events at SCHOC. In light of defendants' recent production of accessible copies of video files misplaced by the Clerk's Office (Docket Entry # 271, p. 3) (Docket Entry # 272, Ex. 13A, 13B, 13C), defendants may have or be able to provide duplicate copies of the four compact discs in an accessible and secure format for this court to review.[2] Meanwhile, defendants

---

[2] Plaintiff's request for "any and all video surveillance evidence" from defendants (Docket Entry # 274, p. 2) is overbroad. It would expand the summary judgment record, which is closed and fully briefed, beyond the video footage in the four compact discs plaintiff filed as part of the summary judgment

4

represent that "[p]laintiff did not provide[] copies" of the four compact discs to defendants when he filed the discs.[3] (Docket Entry # 259, p. 8, n.4).  Consequently, defendants do not know the video content of all of the footage on the four compact discs filed by plaintiff (Docket Entry # 253) and nor does this court.

Cognizant of these circumstances, this court will institute the following procedure in a further attempt to obtain court-accessible video footage of the content of the four compact discs (Docket Entry # 253) consistent with security concerns.  First, this court will return the four compact discs to plaintiff.  Second, defendants are instructed to review the video footage in the four compact discs, to the extent they can access the footage in a viewable format.[4]  If successful, and having thereby acquired knowledge of the video content of the four compact discs (Docket Entry # 253), defendants are instructed to determine if they possess the same video footage and can produce such footage in a format accessible by this court (for example, in the same format as the recently-filed accessible compact discs (Docket Entry # 272)).  Fourth, on or before October 13, 2021, defendants

---

record (Docket Entry # 253).

[3] Plaintiff disagrees.  (Docket Entry # 274, p. 2).

[4] If necessary for defendants to obtain possession of the four, returned compact discs to undertake this task, plaintiff shall assist defendants in securing their access to the compact discs.

5

are instructed to file such footage with the court and provide one copy to plaintiff.[5]  In conjunction with the filing, defendants shall provide an affidavit attesting that the video filed with the court is the same or substantially the same as video footage in the four compact discs (Docket Entry # 253), which this court is now returning to plaintiff.  After October 13, 2021, this court will proceed to adjudicate defendants' summary judgment motion forthwith supplemented by the above-described video, *if any*, filed by defendants.  See Lee, 2021 WL 1318105, at *2.

This approach will ensure that the summary judgment record is not expanded at this late date to include additional material not previously contained on the four compact discs (Docket Entry # 253).  Requiring an affidavit will minimize the risk of an alteration of video footage from the footage in the four compact discs plaintiff filed (Docket Entry # 253) in the event defendants proceed beyond step three.[6]  Providing the video in a court-accessible format will alleviate security concerns.[7]

---

[5] If defendants cannot access the video under step two, or do not possess or cannot produce the same footage in a format accessible to this court under step three, they have no further obligation.

[6] See the previous footnote.

[7] Prior to accessing the video, this court will contact the IT Department to verify that accessing the video does not pose a security risk.

As a final matter, plaintiff's response to the Procedural Order states: "It appears that the court is attempting to limit and restrict access to relevant video footage previously submitted on the 4 compact discs to solely 3 building footage [sic] when in fact the plaintiff submitted countless video files from May 29, 2014."[8]  (Docket Entry # 274, pp. 1-2).  To the contrary, this court is not attempting to reduce access to the footage that is on the four compact discs (Docket Entry # 253) which, at present, this court cannot access.  The admonition to refile only video evidence described on the handwritten labels (Docket Entry # 271, p. 3) was intended to limit refiling to all of the video footage in the four compact discs, including any such footage of the booking area, hallways, and elevators noted by plaintiff (Docket Entry # 274, p. 1, ¶ 2).

## CONCLUSION

In accordance with the foregoing, plaintiff'S request for a court order (Docket Entry # 274, pp. 2-3) is **ALLOWED** in part and **DENIED** in part to the extent defendants shall undertake the above procedure on or before October 13, 2021.

                                        /s/ Marianne B. Bowler
                              **MARIANNE B. BOWLER**

---

[8] Plaintiff's concern arises from the Procedural Order's description of the "[h]andwritten labels on the jackets of the four compact discs" and the admonition to refile the same video evidence.  (Docket Entry # 271, p. 3).

```
                                        United States Magistrate Judge
```