UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JASON LATIMORE,                          )
                                         )
                    Plaintiff,           )
        v.                               )          CIVIL ACTION
                                         )          NO. 14-13378-JGD
KENNETH TROTMAN, et al,                  )
                                         )
                    Defendants.          )

**MEMORANDUM OF DECISION AND ORDER ON**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT IX**

January 13, 2023

DEIN, U.S.M.J.

The Plaintiff, Jason Latimore ("Latimore"), is a former inmate at the Suffolk County

House of Correction ("SCHOC").  He commenced this action on August 14, 2014, alleging, *inter*

*alia*, that during his incarceration the defendants unlawfully confiscated and destroyed his

personal property, including legal documents, and that he was improperly retaliated against as

a result of various complaints he made.  The case has a very complicated procedural history,

which will not be repeated here.  On December 3, 2021 the Court, by Bowler, J., issued a

"Memorandum and Order Re: Defendants' Motion for Summary Judgment (Docket Entry

#242)" ("SJ Decision") entering judgment in favor of the defendants on all counts of the

Complaint, as amended, except for the substantive due process claim in Count IX, which the

parties had failed to address.  See Latimore v. Tompkins, Civil Action No. 14-13378-MBB, 2021

WL 5763011, at *40-41 & n.65 (D. Mass. Dec. 3, 2021).[1]  The case was subsequently transferred to this session.

Following the SJ Decision and an earlier ruling on a motion to dismiss (Docket No. 157), the remaining defendants are Kenneth Trotman, Ryan Dorgan, Roseanne Barrows, Paula Sullivan, and Daniel Allen (collectively the "Defendants").  The matter is presently before the court on "Defendant's Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56" pursuant to which the Defendants are seeking summary judgment on Count IX.  (Docket No. 313).  As detailed in their "Memorandum of Law in Support of Defendants' Motion for Summary Judgment" ("Defs. Mem.") (Docket No. 314), the Defendants understand Count IX to contain a claim for violations of Latimore's substantive due process and equal protection rights.  (See Defs. Mem. at 6-7, 13).  Latimore has filed a "Memorandum of Law in Support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment" ("Pl. Mem.") (Docket No. 331).  Therein he describes Count IX as being a claim that the Defendants "violated his *Fourteenth Amendment Equal Protection Rights* by selective code-enforcement, class-of-one and disparate treatment through arbitrary discrimination, out of spite, ill will, malice and bad faith with no penalogical objective for the differential treatment."  (Pl. Mem. at 1) (emphasis in original).

For completeness, the Court will assume that Count IX contains claims for both substantive due process and equal protection violations.  For the reasons detailed herein and in the SJ Decision, the Defendants' motion for summary judgment is ALLOWED.  Judgment shall enter in favor of the Defendants on Count IX.

---

[1] Judge Bowler's Memorandum of Decision and Order on the defendants' earlier motion for summary judgment, which will be referred to as the "SJ Decision," is found at Docket No. 293.

## II. <u>STATEMENT OF FACTS</u>

Consistent with the SJ Decision, "the governing complaint" in connection with the instant motion is the plaintiff's Third Amended Complaint (Docket No. 100), as supplemented by Latimore's "Short Statement of the Facts as to Sgt. Paula Sullivan and CO Daniel Allen" (Docket No. 185).[2]  <u>See</u> <u>Latimore</u>, 2021 WL 5763011, at *3 n.8.

The SJ Decision contains a painstakingly detailed recitation of the facts which was derived from extensive pleadings and exhibits.[3]  The Court assumes familiarity with those facts, which are incorporated herein by reference.  For convenience, the Court will cite to the SJ Decision and not to the underlying record, except as necessary.  The following is a broad overview of the facts relevant to the pending motion for summary judgment.

---

[2] Latimore filed a motion for leave to file another amended complaint on or about August 7, 2017 (Docket No. 158), which was allowed in part and denied in part by order of the Court dated October 26, 2017 (Docket No. 174).  In so ruling, the Court allowed Latimore to file a brief supplement detailing the facts relating to defendants Sullivan and Allen (Docket No. 174 at 10), which he did on or about December 27, 2017 (Docket No. 185).

[3] In connection with their original motion for summary judgment (Docket No. 242), the Defendants filed a "Statement of Undisputed Facts" ("SF") (Docket No. 244) with exhibits ("Defs. Ex.") (Docket Nos. 244-1 through 244-29).  In addition to his 93-page memorandum of law in opposition to the motion for summary judgment (Docket No. 252) and 117 pages of exhibits (Docket No. 252-1), Latimore filed a "Statement of Disputed Facts" (Docket No. 256) with exhibits (Docket No. 256-1).  (<u>See</u> Docket No. 267 describing pleadings).  The Defendants moved to strike Latimore's Statement of Disputed Facts (Docket No. 258).  The Court issued a detailed Memorandum and Order granting in part and denying in part the motion to strike (Docket No. 292).  As a result, the SJ Decision focuses on the facts that are supported by the record.  <u>See</u>, <u>e.g.</u>, <u>Latimore</u>, 2021 WL 5763011, at *23 (summary judgment entered in favor of defendants "given the lack of evidence of evidentiary quality for a reasonable finder of fact to find in plaintiff's favor. . . .").  Latimore has filed additional exhibits in connection with his opposition to the instant motion for summary judgment.  (Docket No. 331).  Plaintiff's exhibits are collectively cited as "Pl. Ex."

**Overview**

Latimore was incarcerated at the Suffolk County House of Correction serving a sentence from December 9, 2013 through August 8, 2014.[4] Latimore, 2021 WL 5763011 at *5. During the relevant time period, Latimore was housed in the 3-2 housing unit. Id. at *7. The Defendants held the following positions: Barrows was a Building 3 Lieutenant; Sullivan was a Sergeant assigned to the 3-2 housing unit; Allen and Dorgan were unit officers, and Trotman was the kitchen utility officer. Id. On April 3, 2014, Latimore filed a grievance alleging insufficient access to the law library, which was denied. Id. at *5. Thereafter, on various occasions, Sgt. Sullivan filed a number of disciplinary reports against Latimore, which the plaintiff disputed, and in turn, filed grievances challenging Sgt. Sullivan's conduct. Id. at *5-6. Similarly, Latimore contends that he was mistreated by corrections officers, including Allen, on various occasions. Id. at *6-7, 11-12. His allegations of improper treatment by prison officers continued through August 7, 2014, the day before he was released from SCHOC, at which time Latimore alleges that a corrections officer ransacked his cell, going through all of his legal materials. Id. at *15.

On May 29, 2014, Latimore was moved to a segregation unit because of a disciplinary report by Officer Allen, the propriety of which Latimore disputes. Id. at *7. He remained in segregation until June 2, 2014. Id. at *10. Latimore contends that legal documents and paperwork were improperly removed from his cell, and that his paperwork was subsequently either lost or destroyed. He filed grievances to this effect on June 3 and 4, 2014, which were

---

[4] By the time Latimore filed his original Complaint on August 14, 2014, he had completed his sentence and had been released. (See Docket No. 1, ¶ 5).

[4]

ultimately unsuccessful.  Id. at *11-12.  It was Latimore's contention that he needed his legal materials to be able to file motions in three criminal cases in which he was representing himself.  Id. at *13.  However, the Court found that it was undisputed that Latimore "was able to file motions during this time period, did not miss a court date, and had access to Attorney Martin and a paralegal," as well as access to the law library.  Id. (internal punctuation and record citations omitted).

In connection with the SJ Decision, the Court reviewed the evidence relating to what happened to the materials from Latimore's cell in extensive detail, including an analysis of video evidence.  Id. at *7-10.  As the Court found, SCHOC Policies limit the amount and type of materials that can be stored in a prisoner's cell or room.  Id. at *4 (citations omitted).  The limitation (one cubic foot) is based on safety concerns that excess material may pose a fire hazard.  Id. at *4, 25-27.  Excess legal materials are stored by Inmate Legal Services ("ILS").  Id. at *4.  As the Court found further:

> When an inmate is moved to a segregation unit, an inmate's property must be inventoried; a personal garment bag of permitted items is gathered; additional personal property is secured and stored; and nuisance contraband is disposed of.  Under the process, two designated SCHOC officers secure the inmate's property, inventory the property, and arrange for removal of the property from the inmate's cell.  Under Policy S422, inmates assigned to segregation units are permitted to have only "limited items" in their cells.  Property in excess of the permitted items is stored in the booking area until the inmate returns to a general population or is released from SCHOC custody.

Id. at *5 (internal quotations and citations omitted).  This was the procedure followed in Latimore's case.  Id. at *8-10.  Latimore had excess legal material before he was sent to segregation, which was stored by ILS in the law library, and to which Latimore had access.  Id. at *13.

Latimore received a bag of property, including copies of legal cases, while he was in segregation.  Id.  On June 3, 2014, he received a box containing his legal materials.  Id.  Absent from this delivery was a W.B. Mason box of printed legal cases, which was delivered to Latimore in late June 2014.  Id. at *10, 13.  In mid-July 2014, an additional set of plaintiff's legal materials in manila envelopes was located in the segregation property room.  Id. at *11, 13.  These materials were stored by ILS, and Latimore was notified by July 22, 2014 that the materials were in the law library.  Id.  The Court concluded, based on a review of all the evidence that was supported by the record, that there were no material facts in dispute and that Latimore's legal material was not destroyed or confiscated.  Id. at *14.

After his release from segregation, Latimore continued to be cited for disciplinary issues, and he continued to file grievances.  Id. at *12.

### The SJ Decision

As noted above, the Court entered summary judgment in the defendants' favor on all counts of the governing complaint except for the substantive due process claim in Count IX, which the defendants had failed to argue.  Briefly, the counts included a claim of conversion (Count I); First Amendment retaliation and free speech claims brought pursuant to 42 U.S.C. § 1983 (Count II); claims for violations of Latimore's Sixth Amendment right to counsel and access to the courts (Count III); claims of procedural due process violations (Count IV and VII); a claim for violations of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I (Count V); a count for intentional infliction of emotional distress (Count VI); and the Eighth Amendment

violations included in Count IX.[5]  Significantly, in connection with the conversion claim, the

Court found that Latimore's legal materials were not destroyed, and that to the extent his

access to the material was restricted, it was for a short period of time and in conformity with

SCHOC regulations, which were defensible.  <u>Latimore</u>, 2021 WL 5763011 at *19-20.  With

respect to the First Amendment retaliation claim, the Court found that the disciplinary actions

taken against Latimore by the defendants did not rise to the level of actionable adverse actions

"even when viewed on a cumulative basis."  <u>Id.</u> at *21.  Latimore's Sixth Amendment claims

failed because the undisputed facts established that he was not deprived of his legal materials,

and he did not suffer any injury as he had access to counsel and the courts.  <u>Id.</u> at *28-32.

Finally, but without limitation, summary judgment entered in favor of the defendants on

Latimore's claim of intentional infliction of emotional distress because "no reasonable

factfinder could conclude" that the defendants' conduct "was extreme and outrageous."  <u>Id.</u> at

*39.

### Count IX

In connection with the SJ Decision, the Court interpreted Count IX of the governing

complaint as alleging a claim under 42 U.S.C. § 1983 for "substantive due process and Eighth

Amendment violations against Trotman, Dorgan, Barrows, Allen, and Sullivan for 'cruel and

unusual punishment' based on the alleged intentional disposal of legal materials and

property[.]"  <u>Id.</u> at *3.  The claim is "based on the disposal of plaintiff's legal materials, which

impaired plaintiff's defenses in three criminal cases."  <u>Id.</u> at *3 n.11.  <u>See</u> <u>also</u> <u>id.</u> at *39.  The

---

[5] Count VIII was dismissed by the Court in its August 2017 ruling on the defendants' motion to dismiss (Docket No. 157).

Court determined that the defendants had moved for summary judgment only on the Eighth Amendment claim, and that Latimore had not addressed Count IX at all in his pleadings.  Id. at *40 & n.65 ("Defendants do not move for summary judgment on the substantive due process claim in Count IX").[6]  In entering summary judgment in the defendants' favor on the Eighth Amendment claim, the Court ruled that "there is insufficient evidence to allow a factfinder to find that the above defendants *knew* about plaintiff's three, pending criminal cases or that plaintiff was *pro se* in these cases."  Id. at *41. (emphasis in original). The Court further held as follows:

> Defendants' additional argument that there is no showing that they discarded or destroyed his legal materials is also well taken thus providing an alternative basis to allow summary judgment.  As previously discussed, a reasonable factfinder could not conclude that one or more defendants discarded the W.B. Mason box of legal papers or the bag of manila envelopes with legal paperwork.  Rather, [Correctional Officer Michael] Misci delivered the W.B. Mason box of legal materials to plaintiff in late June 2014; and on July 22, 2014, plaintiff was notified that his legal papers were secured in the law library.  The Eighth Amendment claim Count IX, whether viewed as deliberate indifference to plaintiff's safety or to plaintiff's mental health, is subject to summary judgment.

Id. (internal quotations, record citations, and footnote omitted).

Additional facts will be provided below as appropriate.

### III.  ANALYSIS

#### A.  Summary Judgment Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

[6] The Court also noted that while Count IX referred to "Procedural and Substantive Due Process," the allegations did not raise any procedural issues.  Id. at *3 n.11.  To avoid any confusion, this Court adopts the analysis in the SJ Decision relating to Count IV, which expressly raised a procedural due process claim, and confirms that summary judgment should enter in the defendants' favor on any claims of procedural due process violations for the reasons stated in the SJ Decision.  See id. at *33.

R. Civ. P. 56(a).  Material facts are those that have "the potential of affecting the outcome of the case," and there is a genuine factual dispute where "the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party.'"  Taite v. Bridgewater State Univ., Bd. of Trs., 999 F.3d 86, 93 (1st Cir. 2021) (citations omitted).  The court must review the record "in a light most favorable to the non-moving party[.]"  Lima v. City of E. Providence, 17 F.4th 202, 206 (1st Cir. 2021).  Nevertheless, the court "may ignore conclusory allegations, improbable inferences, and unsupported speculation."  Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (quotations omitted).

When a properly supported motion for summary judgment is made, "the nonmoving party must ... 'set forth specific facts showing that there is a genuine issue for trial.'"  Carrozza v. CVS Pharmacy, Inc., 992 F.3d 44, 56-57 (1st Cir. 2021) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)).  The non-moving party can avoid summary judgment only by providing properly supported evidence of a genuine dispute about material facts.  See Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).  Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Popular Auto, Inc. v. Reyes-Colon (In re Reyes-Colon), 922 F.3d 13, 20 (1st Cir. 2019) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)).

Applying these principles to the instant case, the defendants' motion for summary judgment is allowed.

### B. **Substantive Due Process**

Under the Due Process Clause of the Fourteenth Amendment, a state is prohibited from

depriving a person of "life, liberty, or property, without due process of law[.]"  U.S. Const.

amend. XIV, § 1.[7]  "This guarantee has both substantive and procedural components.  The

substantive due process guarantee functions to protect individuals from particularly offensive

actions on the part of government officials, even when the government employs facially neutral

procedures in carrying out those actions."  Pagán v. Calderón, 448 F.3d 16, 32 (1st Cir. 2006).

"The substantive due process guarantee does not, however, serve as a means of

constitutionalizing tort law so as to 'impos(e) liability whenever someone cloaked with state

authority causes harm.'"  Id. (quoting County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S.

Ct. 1708, 1717, 140 L. Ed. 2d 1043 (1998)).

In order to prevail on a substantive due process claim, the plaintiff must prove that the

state's conduct "shocks the conscience."  Cruz-Erazo v. Rivera-Montańez, 212 F.3d 617, 622 (1st

Cir. 2000) (and cases cited).  The First Circuit has explained this very onerous burden as follows:

> "There is no scientifically precise formula for determining whether executive action is—
> or is not—sufficiently shocking to trigger the protections of the substantive due process
> branch of the Fourteenth Amendment." Pagán, 448 F.3d at 32. However, certain
> principles have emerged from the case law.  Executive acts that shock the conscience
> must be "truly outrageous, uncivilized, and intolerable," Hasenfus v. LaJeunesse, 175 F.3d
> 68, 72 (1st Cir.1999), and "the requisite arbitrariness and caprice must be stunning,
> evidencing more than humdrum legal error," Amsden v. Moran, 904 F.2d 748, 754 n. 5
> (1st Cir.1990). Indeed, "[a] hallmark of successful challenges is an extreme lack of

---

[7] In the case of convicted prisoners, such as Latimore, instead of the Fourteenth Amendment "the Eighth
Amendment is usually the constitutional provision referred to by the courts; but the substance of the
protection is the same."  Hasenfus v. LaJeunesse, 175 F.3d 68, 71 n.1 (1st Cir. 1999) (citation omitted).
See also Ruiz-Rosa v. Rullán, 485 F.3d 150, 155 (1st Cir. 2007) (while the Fourteenth Amendment
provides protection for pretrial detainees, and the Eighth Amendment provides protection for convicted
inmates "[g]enerally, the standard applied under the Fourteenth Amendment is the same as the Eighth
Amendment.").

proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." González–Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir.2010) (internal quotation marks and ellipses omitted).

Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011).

"Although each determination of whether state conduct 'shocks the conscience' is necessarily fact-specific and unique to the particular circumstances in which the conduct occurred," there are circumstances where the facts alleged do not rise to the level of a constitutional violation and the court may rule as a matter of law.  See Cruz-Erazo, 212 F.3d at 622-24 (dismissing complaint for failure to state a claim where, although the question was "a close one," "the conduct alleged by appellants does not sufficiently shock the conscience so as to violate substantive due process[.]").  In the instant case, the undisputed facts, as detailed in the SJ Decision, defeat Latimore's substantive due process claim.

After a detailed and extensive review of the evidence, the Court concluded that Latimore's legal papers were not destroyed, and that he was not wrongfully deprived of access to his materials.  Latimore was able to effectively participate in all of his legal cases.  The defendants did not intend to interfere with Latimore's prosecution of his cases, and did not interfere.  Latimore had access to all of his documents, as well as to legal counsel and the courts.  Moreover, the undisputed facts established that the disciplinary sanctions imposed on Latimore were justified and that none of the defendants acted with wrongful intent or acted for the purpose of causing Latimore harm.  There is no record support that the defendants engaged in conduct that "shocks the conscience" or otherwise violated Latimore's substantive due process rights.

Thus, the Defendants are entitled to summary judgment on Latimore's substantive due process claim in Count IX.

### C. __Equal Protection__

Latimore contends that Sullivan singled him out for discipline in violation of his equal protection rights, and that Allen did so as well under the direction of Sullivan.  (See Pl. Mem. at 3-25).  Again, however, the prior rulings of the Court in the SJ Decision compel the conclusion that summary judgment be entered in favor of the Defendants on this claim.

"The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group." Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105-06 (1st Cir. 2015).  It is "usually deployed in cases involving state or local curtailment of personal constitutional rights (e.g., against racial discrimination) and ordinarily against generic distinctions made in statutes or regulations." Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n, 610 F.3d 8, 15 (1st Cir. 2010).  Thus, "[a]n equal protection claim requires 'proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995)).

"'Typically, a plaintiff asserting an Equal Protection Clause violation 'must identify his putative comparators' to make out a threshold case of disparate treatment.'"  Harrington v. City of Attleboro, 172 F. Supp. 3d 337, 346 (D. Mass. 2016) (alteration omitted) (quoting Doe v.

Town of Stoughton, Civil Action No. 12-10467-PBS, 2013 WL 6498959, at *2 n.3 (D. Mass. Dec. 10, 2013)).  Under an ordinary equal protection claim, "[t]he standard for determining whether individuals are similarly situated 'is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.'" Pollard v. Georgetown Sch. Dist., 132 F. Supp. 3d 208, 223 (D. Mass. 2015) (quoting Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001)).  To prevail on a claim of being singled out as a "class of one," (and not due to being a member of a protected class) the plaintiff must show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Freeman, 714 F.3d at 38 (quotation omitted).  Where the equal protection claim is based on a class-of-one theory, the "plaintiff bears the burden of showing that his comparators are similarly situated in all respects relevant to the challenged government action."  Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 639-40 (1st Cir. 2013).  The plaintiff must establish an "identity of entities and circumstances to a high degree."  Rectrix Aerodrome Ctrs., 610 F.3d at 16.  See also  Freeman, 714 F.3d at 38 (quoting Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007) (there must be "'an extremely high degree of similarity between [the plaintiff] and the persons to whom [he compares himself].'")).

In the instant case, while Latimore argues that he was punished more harshly and subjected to more offensive reprimands than other inmates, he has not provided any details from which the Court could identify his comparators or establish that they were similarly situated in all relevant respects.  The plaintiff's failure to identify the putative comparators or to present facts establishing his similarity to those comparators warrants judgment in the

Defendants' favor on all of his equal protection claims.  See Gianfrancesco, 712 F.3d at 640 (dismissing class-of-one equal protection claim where plaintiff identified only one putative comparator and made no effort to establish how or why his business was similarly situated to that comparator "in any relevant way."); Pollard, 132 F. Supp. 3d at 223 (dismissing both ordinary equal protection claim and class-of-one equal protection claim where plaintiff alleged that school district "afforded [the minor plaintiff] a lower level of protection compared to 'other students,'" but never alleged "any facts to establish that these students are similarly situated."); Brown v. Corsini, 657 F. Supp. 2d 296, 309 (D. Mass. 2009) (summary judgment granted in favor of defendants on equal protection claim where prisoners failed to submit evidence that they received disparate treatment or that their treatment was based on a discriminatory motive).

   Finally, the undisputed facts defeat Latimore's claim.  In connection with the SJ Decision, the Court found that the handling of Latimore's papers was in conformity with valid SCHOC policies and procedures, and that the defendants did not act with improper intent.  Latimore, 2021 WL 5763011, at *17-19, 39.  Moreover, the undisputed facts established that the disciplinary reports issued against Latimore "were well founded" and that while "any yelling, slamming of cell doors, and ordering plaintiff to 'lock in,' may be annoying and aggravating" the Defendants' conduct was not extreme or actionable.  Id. at *39.  For this reason as well, Latimore has not met his burden of proving any violation of his equal protection rights.[8]

---

[8] In light of this Court's conclusion, it will not reach the Defendants' claim of qualified immunity.

## IV. <u>CONCLUSION</u>

For all the reasons detailed herein, the "Defendants' Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56" (Docket No. 313) is ALLOWED, and summary judgment shall enter in the Defendants' favor on Count IX of the Complaint, as amended.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge